**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Regina Russell,  : Case No.  3:05 CV 07430

    Plaintiff,  :

vs.  : **MAGISTRATE'S REPORT
AND RECOMMENDATION**

University of Toledo, et al.,  :

    Defendants.  :

This employment discrimination case, filed pursuant to 42 U.S.C. § 2000e(a) (1) and OHIO REV. CODE § 4112, has been referred to the undersigned Magistrate for report and recommendation. Pending is Defendants' Motion for Summary Judgment (Docket No. 24), Plaintiff's Opposition (Docket No. 39) and Defendants' Reply (Docket No. 40). For the reasons that follow, the Magistrate recommends that the Motion for Summary Judgment be granted.

**THE PARTIES**

Plaintiff is an African American citizen of the United States whose permanent residence is in Lucas County, Ohio (Docket No. 1, ¶ 9). In 1990, she obtained her nursing degree from the Defendant University of Toledo (University) (Docket No. 28, p. 8). From 1992 until the time of her discharge on May 20, 2005, Plaintiff was employed by the Defendant University as a staff nurse in the Student Medical Center (SMC) (Docket No. 1, ¶ 9). Since June 2005, Plaintiff has been employed as a staff nurse for CR Associates (Docket No. 28, pp. 13-14).

Defendant University is a public institution of higher education which is a body politic and

corporate. OHIO REV. CODE § 3345.011 (Thomson/West 2007).

During Plaintiff's tenure at the SMC, Defendant Randall J. McElfresh was the Director of Labor and Employee Relations. In that capacity, he negotiated contracts, responded to grievances and coordinated all investigations (Docket No. 35, pp. 9, 10).

Defendant Kristine Jo Armstrong was the clinical coordinator for the Defendant University SMC (Docket No. 30, p. 6). In that capacity, she supervised four staff nurses and one laboratory technician, maintained the physician provider schedules and assured the quality of the work performed under her supervision (Docket No. 30, p. 6, 8-9). From February 1997 until Plaintiff was terminated, Defendant Armstrong was Plaintiff's supervisor (Docket No. 30, p. 7).

Defendant Norine T. Wasielewski was the Senior Director of Health and Wellness, a unit under the Division of Student Life, at Defendant University (Docket No. 33, pp. 6, 7). In that capacity, she was responsible for leadership, strategic planning, budget, compliance with rules and regulations that exist including federal and state laws and accreditation standards and the efficiency and effectiveness of the unit (Docket Doc. No. 33, p. 9).

Defendant John E. Mills was employed by Defendant University from August 1997 through June 2005 as a physician (Docket No. 32, p. 8). Until Plaintiff's separation from Defendant University in May 2005, Defendant Mills was one of the individuals with whom she worked (Docket No. 32, p. 9).

**FACTUAL BACKGROUND**

Plaintiff was discharged from Defendant University on or about May 20, 2005. Within one month, she obtained employment earning approximately $5 more per hour than what she previously made (Docket No. 28, pp. 14, 15). In her new job, she earned a shift differential and was permitted

to contribute to a 401K. Defendant University contributed 13.8% to her pension plan; her present employer did not make pension contributions (Docket No. 28, p. 16).

In November 2002, Plaintiff's evaluation reflected that she met all of the performance dimensions of her job except for team effort and cooperation (Docket No. 28, Defendant's Exhibit Q). In particular, Plaintiff was selective as to with whom she would cooperate, she rolled her eyes at Defendant Armstrong, failed to make eye contact with Defendant Armstrong and ignored Defendant Armstrong when Plaintiff made private calls (Docket No. 28, p. 101). Plaintiff recalled that Defendant Armstrong told her that she would never indicate on a performance evaluation that Plaintiff met performance dimensions or give her a rating other than "below" expections regardless of her performance (Docket No. 28, pp.102, 114, 116, 117).

Plaintiff was suspended for five days after allegedly failing to properly triage a patient on June 4, 2003 (Docket No. 28, pp. 70-73, 83, 124; Defendant's Exhibit U). However, Plaintiff claims that the clerical staff did not register an individual seeking treatment; consequently, the individual was not a patient and did not have a medical chart (Docket No. 28, p. 78-79). Plaintiff filed a grievance which was denied and the discipline was upheld (Docket No. 28, Defendant's Exhibit U).

Dr. Mills testified that on or about February 15, 2005, he gave an order to administer Solu-Medrol to a patient intravenously. Plaintiff asked that he change the chart to reflect that the drug had been administered intramuscularly. Dr. Mills updated the record to reflect that the drug was actually administered intravenously (Docket No. 32, pp. 36-37).

On March 7, 2003, Plaintiff was issued a written warning for her failure to follow the necessary nursing action to determine a patient's needs (Docket No. 28, Defendant's Exhibit N). When reminded that Plaintiff had discussed the matters with her while the patient was present,

3

Defendant Armstrong modified the written warning to reflect an oral reprimand (Docket No. 28, pp. 93-94). Plaintiff refused to permit Carol Leonard[1] access to vendor cards and instead suggested that Plaintiff refer the vendors to Carol (Docket No. 28, pp. 95-96). Carol Leonard placed a written warning of insubordination in Plaintiff's file dated April 4, 2003 (Docket No. 28, Defendant's Exhibit P).

On April 5, 2004, Plaintiff was given a written order of a working suspension from May 10 to May 14 for attempting to circumvent the billing system by coding the patient's care as a nurse's visit when it was a physician visit (Docket No. 28, pp. 142-144; Defendant's Exhibit X). The written order further warned that further violation of policy, failure of good behavior or neglect of duty would result in severe disciplinary action, including discharge (Docket No. 28, Defendant's Exhibit X).

Each of the Defendants recounted, during their depositions, the events that, in their opinion, necessitated Plaintiff's dismissal. Defendant Armstrong testified that when patients arrived without an appointment, Plaintiff would not prioritize them for immediate attention according to policy (Docket No. 30, pp. 10-12). On a monthly basis, patients waited to be taken to their rooms while Plaintiff addressed personal issues on the telephone or studied (Docket No. 30, pp. 19, 20). There were issues with Plaintiff's timeliness and improper requests for time off (Docket No. 30, p. 16). Plaintiff arrived at work at least five minutes late at least weekly if not daily (Docket No. 30, pp. 20, 22). Without prior notice, Plaintiff cancelled vacation days and reported to work. In some instances, Defendant Armstrong had already employed contingent staff (Docket No. 30, p. 24).

---

[1] The record is unclear as to Carol Leonard's position. However, the University of Toledo web site lists Carol Leonard as the administrative coordinator for the University of Toledo Student Medical Center. Http://student-services2.utoledo.edu/healthservices/contact.html

Defendant Armstrong disciplined Plaintiff for failure to triage a patient on November 13, 2003 (Docket No. 30, p. 68). Defendant Armstrong requested a hearing to determine if discipline was required for Plaintiff's failure to follow through with laboratory or other followup care (Docket No. 30, pp. 81-82, 86). Defendant Armstrong admitted, however, that Plaintiff was not disciplined since there was no policy, written or otherwise, and no expectation for monitoring patient files (Docket No. 30, p. 92). In her evaluation for 2004, Defendant Armstrong complained that only one of four full-time providers would work with Plaintiff. The remaining three employees did not trust Plaintiff to provide proper care (Docket No. 31, pp. 228-229). Eventually, the fourth full-time provider expressed the same concern with Plaintiff's inability to provide follow-up care in making specialist appointments (Docket No. 31, p. 230). In the performance appraisal of November 11, 2004, Defendant Armstrong opined that Plaintiff failed to meet the professional expectations in the quality, team effort/cooperation and problem solving/decision-making components of her job. Although Plaintiff met the performance expectations in the areas of quality, timeliness, communication skills and planning/scheduling, Defendant Armstrong opined that Plaintiff needed improvement in all of these areas (Docket No. 29, Defendant's Exhibit UU).

Defendant Wasielewski testified that she sent an electronic message to the associate vice president for human resources pertaining to the suture incident[2] (Docket No. 33, pp. 19, 26). She also wrote an incident report regarding the improper administration of Solu-Medrol[3] (Docket No. 33, p. 37). Ms. Wasielewski approached Plaintiff in the hallway and inquired why she failed to

---

[2] On February 15, 2005, Defendant Dr. John Mills asked Plaintiff to remove sutures from a patient. Plaintiff refused on the basis that removal violated policy and/or protocol (Docket No. 32, Plaintiff's Exhibit Mills 1).

[3] Plaintiff administered the drug intramuscularly rather than intravenously (Docket No. 32, p. 35).

speak to her (Docket No. 33, p. 44). On March 11, 2004, Ms. Wasielewski requested disciplinary action of an incident occurring on February 16, 2004 involving the alleged inaccurate coding of a nurse consultation (Docket No. 33, Plaintiff's Exhibit W1).

Dr. Mills admitted that initially, Plaintiff worked very hard and worked very well with him (Docket No. 32, p. 21). However, her performance deteriorated after he refused to sign a letter addressed to the state board complaining that she had been inappropriately reprimanded (Docket No. 32, pp. 14, 16). Dr. Mills filed a written complaint with Defendant McElfresh after Plaintiff refused a direct order to remove a patient suture (Docket No. 32, Plaintiff's Exhibit 1). Attempting to assist Plaintiff, Dr. Mills admitted that he changed a medical order to reflect that he ordered Solu-Medrol to be administered intramuscularly (Docket No. 32, p. 34).

Defendant McElfresh explained that Defendant University followed progressive discipline which included written reprimands, suspensions and coaching (Docket No. 35, p. 19). Specifically, the human resources department became involved in discipline upon the request from a supervisor about an employee's conduct. The disciplined employee was entitled to a pre-disciplinary hearing if suspension, demotion or termination was proposed (Docket No. 35, p. 21). The employee could ultimately request that the disciplinary action be removed from his or her files (Docket No. 35, p. 24). In Plaintiff's case, the investigator of the Solu-Medrol incident "turned that incident against Regina and made it a part of the charges against her" (Docket No. 35, p. 43). He imposed a working suspension on April 15, 2004 for coding a patient visit as a nurse consult at no charge to the patient. He warned Plaintiff that further violation of policy, failure of good behavior or neglect of duty would result in severe disciplinary action (Docket No. 35, Plaintiff's Exhibit 31). In May 2004, Defendant McElfresh denied Plaintiff's grievance based on allegations of harassment (Docket No.

35, Plaintiff's Exhibit 32). In September 2004, Defendant McElfresh and two physicians coordinated their response to Plaintiff's charge pending at the Ohio Civil Rights (OCRC) and Equal Employment Opportunity Commissions (EEOC). Defendant McElfresh advised the physicians to contact his office should Plaintiff refuse to perform "some type of function" (Docket No. 35, pp. 14-15).

After a pre-disciplinary hearing conducted on March 7, 2005, Defendant McElfresh recommended that Plaintiff be terminated (Docket No. 35, pp. 31, 33, 34). Plaintiff was given the opportunity to respond to allegations that she violated acceptable codes of conduct on March 7, 2005. The management of the Student Medical Center provided evidence to the contrary. James M. Sciarini, Associate Vice President of Human Resources found that Plaintiff had violated, *inter alia*, university procedure and OHIO REV. CODE § 124.34[4] and terminated her immediately (Docket No. 35, Plaintiff's Exhibit 29).

## **PROCEDURAL BACKGROUND**

On March 8, 1996, Plaintiff filed a charge with the OCRC and EEOC alleging that she had been subjected to disparate treatment (Docket No. 29, Defendant's Exhibit NN). Plaintiff's charge of unlawful discrimination was denied (Docket No. 29, Defendant's Exhibit OO). Plaintiff filed a discrimination or harassment complaint with Defendant University's Office of Affirmative Action

---

[4]

Section 124.34 states in relevant part:
The tenure of every officer or employee in the classified service of the state and the counties, shall be during good behavior and efficient service. No such officer or employee shall be reduced in pay or position, fined, suspended, or removed, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty, insubordination, neglect of duty, violation of this chapter or the rules of the director of administrative services or the commission, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office. An appointing authority may require an employee who is suspended to report to work to serve the suspension.
OHIO REV. CODE § 124.34 (Thomson West 2007).

7

on June 15, 1999 alleging that she was discriminated against based on race and religion (Docket No. 29, Defendant's Exhibit PP). Plaintiff filed a charge with the OCRC alleging that she was treated differently based on race (Docket No. 29, p. 227).

Plaintiff filed a complaint with the Defendant University's Office of Affirmative Action on April 15, 2003 alleging discrimination by Defendant Armstrong (Docket No. 29, Defendant's Exhibit RR). On June 1, 2004, the EEOC dismissed Plaintiff's charge of discrimination (Docket No. 29, Defendant's LL). The EEOC dismissed another charge on December 17, 2004 (Docket No. 29, Defendant's Exhibit MM).

Plaintiff filed a charge for discrimination with the OCRC alleging wrongful discharge based on race and retaliation on May 31, 2005 (Docket No. 29, Exhibit A). On August 10, 2005, the EEOC notified Plaintiff that based on its investigation, it was unable to conclude that the information obtained as a result of the investigation established violations of the relevant discrimination statutes (Docket No. 29, Exhibit B).

Plaintiff filed a timely Complaint in this Court. Defendants filed a Motion for Summary Judgment.

**SUMMARY JUDGMENT STANDARD**

The summary judgment procedure is designed to dispose of cases wherein there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (*citing LaPointe v UAW, Local 600*, 8 F.3d 376, 378

(6th Cir. 1993)).

The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case. *Celotex Corporation v. Catrett*, 106 S. Ct. 2548, 2552-2553 (1986). In the face of Defendant's properly supported Motion for Summary Judgment, the Plaintiff cannot rest on his or her allegations to get to the jury without significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Incorporated*, 106 S. Ct. 2505, 2510 (1986) (*citing First National Bank of Arizona v. Cities Services Co.*, 88 S. Ct. 1575, 1593 (1968)). The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff. *Id.* at 2512.

To oppose a motion for summary judgment successfully, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1355 (1986). In determining if the facts are material, the court must look to the substantive law. The evidence of the non-movant is then taken as true and all justiciable inferences are drawn in his or her favor. *Anderson*, 106 S. Ct. at 2513 (*citing Addickes v. S.H. Kress & Co.*, 90 S. Ct. 1598, 1609-1610 (1970)). The Court must refrain from resolving conflicts in the evidence or making credibility determinations. *Id*. If, after deciding, the dispute about a material fact is genuine, summary judgment should be denied.

Once the moving party has met its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex,* 106 S. Ct. at 2552-53. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. *Pierce v. Commonwealth Life Insurance*, 40 F.3d 796, 800 (6th Cir. 1994). The non-moving party must present significant probative evidence

9

in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Company*, 8 F.3d 335, 339-340 (6th Cir. 1993). If, after adequate time for discovery, the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim or her claim, summary judgment is appropriate. *Celotex*, 106 S. Ct. at 2552-53.

## **DISCUSSION**

Title VII declares it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race. 42 U.S.C. § 2000e-2(a)(1) (Thomson/West 2007). Ohio's civil rights statute also makes it unlawful for an employer to discriminate on the basis of race. *See* OHIO REV. CODE § 4112 (Thomson/West 2007). The district court shall consider Plaintiff's federal and state-law discrimination claims under the Title VII framework because Ohio's requirements are the same as under federal law. *Carter v. University of Toledo,* 349 F.3d 269, 272 -273 (6th Cir. 2003) (*citing Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St.3d 89, 630 N.E.2d 669, 674 (1994)).

Plaintiff contends that, pursuant to Title VII and Ohio's civil rights statute, she was: wrongfully discharged, subjected to disparate treatment by Defendant University, subjected to an egregious and pervasive racially hostile work environment, retaliated against for exercising her First Amendment rights and deprived of the rights and privileges secured by 42 U. S. C. §§ 1983 and 1985 and OHIO REV. CODE § 4112. Defendants claim that they are entitled to summary judgment on the claims of race discrimination, that Plaintiff cannot prove that their nondiscriminatory rationale for discharging her was a pretext for discrimination, that Plaintiff cannot establish that she was harassed because of her race, that Plaintiff cannot establish a prima facie case for unlawful

retaliation or that the legitimate non-discriminatory reason for her discharge was a pretext for unlawful retaliation and that Plaintiff cannot establish that the Defendants engaged in unlawful action in violation of Section 1983, Section 1985, OHIO REV. CODE § 4112 or Ohio's public policy.

*Count One: Disparate Treatment*

Plaintiff alleges that she was subjected to disparate treatment when other non-minority employees of Defendant University's SMC engaged in similar conduct but were subjected to less severe punishment. Defendants claim that even if Plaintiff could prove that she was subjected to disparate treatment, Plaintiff cannot sustain the burden of proof required to show that her discharge was a pretext for race discrimination. Thus, Defendants claim they are entitled to summary judgment on Count one.

"[T]he Sixth Circuit has frequently phrased the requirements of a *prima facie* claim of disparate treatment using . . . a 'comparable non-protected person was treated better' element as one of the requisites[; therefore], the plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Ulmer v. Dana Corporation*, 200 F.Supp.2d 804, 821 (N. D. Ohio 2002) (*citing Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-583 (6th Cir. 1992); *Davis v. Monsanto Chemical Company,* 858 F.2d 345 (6th Cir. 1988) *cert. denied* 109 S. Ct. 3166 (1989); *Long v. Ford Motor Co.,* 496 F.2d 500 (6th Cir. 1974)). "In order to prove the second element of the prima facie case, the plaintiff must produce evidence that the relevant other employees are 'similarly situated in all respects.' " *Id.* (*citing Hollins v. Atlantic Company,* 188 F.3d 652, 659 (6th Cir. 1999) (*quoting Mitchell,* 964 F.2d at 583). Precise

11

equivalence between employees is not required. (*citing Harrison v. Metropolitan Government,* 80 F.3d 1107, 1115 (6th Cir. 1996)). To be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his or her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it[5]. *Hollins,* 188 F.3d 652, 659 (6th Cir. 1999) (*citing Mitchell*, 964 F.2d at 583).

Plaintiff claims that (1) Defendant Armstrong, a Caucasian employee, was not disciplined for failing to properly triage a patient in 2004 or rupturing a patient's ear drum, (2) Elizabeth Graflin, a Caucasian employee, obtained medical treatment for her spouse in contradiction to Student Medical Center policy, (3) Gay Trace, a Caucasian employee, placed a patient in a treatment room and left for the day without informing anyone about the patient's whereabouts and (5) Colleen Yoder, a Caucasian employee was given flexible time to attend class (Docket No. 39, Affidavit of Regina Russell, Docket No. 29, p. 226)

Such allegations are legally insufficient to make a prima facie case for disparate treatment based on race. Plaintiff has made allegations but failed to show that the conduct was similar to the failure to administer a drug intravenously or follow the direct order of a physician. Consequently, there is a lack of probative evidence from which this Court can find that there is a genuine dispute as to whether she is similarly situated with her co-workers. Even if the Court were to construe the

---

[5]

The Magistrate acknowledges that the EEOC has determined that comparisons are common but a complainant may win a discrimination case without using comparative evidence. In *Buiz v. Gutierrez*, EEOC DOC 0120051303 (February 28, 2007), the Commission reversed the decision of the administrative law judge who found that the complainant failed to establish a prima facie case for discrimination because he failed to identify any similarly situated person not in his protected group. However, such administrative interpretation is not binding on the court. *See Meritor Savings Bank v. Vinson*, 106 S. Ct. 2399, 2404 (1986).

evidence in Plaintiff's favor, there is insufficient evidence from which the Court can determine if differentiating or mitigating circumstances exist to distinguish Plaintiff's conduct from that of her co-workers and Defendant University's treatment of such conduct. Accordingly, summary judgment must be granted on Count one.

*Count Two: Racially Hostile Work Environment*[6]

Plaintiff claims that her activities were persistently monitored, that she was given conflicting instructions and that she was subjected to extraordinary disciplinary action. These actions created a racially hostile work environment. Plaintiff contends that she was entitled to be free of such activities.

Title VII prohibits racial harassment that creates a hostile or abusive work environment. *Newman v. Federal Express*, 266 F.3d 401, 405 (6th Cir. 2001) (*citing Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999)). In order to establish a prima facie case of hostile work environment based on race under Title VII, a plaintiff must show: 1) that he is a member of a protected class; 2) that he was subjected to unwelcome racial harassment; 3) that the harassment was based on race; 4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *Id.* In determining whether there was a hostile or abusive workplace environment, the court must look to the totality of the circumstances. *Id.* (citations omitted).

The court should consider the frequency of the discriminatory conduct; its severity; whether

---

[6] In her charge filed with the EEOC on May 31, 2005 (Docket No. 1, Exhibit A), Plaintiff addressed her contention that she was subjected to a racially hostile work environment. This claim is within the scope of the EEOC investigation.

13

it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* (*citing Harris v. Forklift System,* 114 S. Ct. 367, 371 (1993)). The work environment must be both objectively and subjectively offensive. *Id.* (*citing Harris v. Forklift System,* 114 S. Ct. 367, 369 (1993)). Discrimination in this form occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Vitt v. City of Cincinnati*, 250 F. Supp.2d 885, 889 (S.D.Ohio,2002) (*citing Harris,* 114 S. Ct. at 370; *quoting Meritor Savings Bank,* 106 S. Ct. 2399, 2404 (1986)).

In her brief, Plaintiff alleges several events that she believes created a racially hostile work environment. First, Defendants required her to work a less desirable schedule than even temporary workers. Second, she was assigned a desk in the rear of the building. Third, she was not permitted to attend diversity-related university activities during work hours. Fourth, she was monitored more frequently than her counterparts. Fifth, she was disciplined more often than her white counterparts or supervisor.

When these events are accepted as true and viewed in her favor, Plaintiff has established that she is a member of a protected class. Clearly, she and her colleagues had differences and she was adversely affected by what could be perceived as a hostile work environment. However there is no probative evidence that Defendants' acts were the result of racial hostility or abuse. There are no offensive utterances, offhand comments, physical threats or humiliating incidents from which a jury could conclude that Plaintiff was forced to work in an objectively racially hostile work environment. Moreover, Plaintiff has failed to present significant probative evidence that her work performance

14

was affected by the alleged discriminatory conduct. None of the events alleged cross the threshold for purposes of a hostile environment claim. Accordingly, Defendants are entitled to summary judgment on Count Two of Plaintiff's Complaint.

*Count Three: Retaliation*

In Count Three of Plaintiff's Complaint, allegations are made that Defendants discharged her after she (1) spoke publicly at a rally on behalf of a group of the faculty and staff and (2) filed a charge with the EEOC. Plaintiff filed a charge with the EEOC alleging that Defendants' acts were the result of racial discrimination (Docket No. 29, Exhibit A). The EEOC was unable to conclude that the information obtained established a violation under Title VII.

Despite the findings of the EEOC, a plaintiff can survive a motion for summary judgment against a claim for unlawful retaliation under Title VII by producing direct evidence of retaliation or establishing a prima facie case. To demonstrate a *prima facie* case of retaliation, plaintiff must show that (1) he was engaged in activity protected by Title VII, (2) the activity was known to the defendant, (3) he was subjected to tangible employment action, and (4) there is a causal link between the protected activity and the adverse employment action. *Wade v. Knoxville Utilities Board,* 259 F.3d 452, 463 (6th Cir. 2001) (*See Johnson v. Department of Health and Human Services,* 30 F.3d 45, 47 (6th Cir. 1994)). The evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action. *Id.* (*citing Walborn v. Erie County Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998)).

Plaintiff cannot make a prima facie case for retaliation as she has not met steps two or four of the requirements. Even if the Court agrees that Plaintiff was engaged in activity protected by Title VII, there is no probative evidence that Defendants were aware of Plaintiff's participation in

these activities. The press release issued on February 18, 2005, neither mentioned Plaintiff nor referred to her in the dicta about African American firings by Defendant University (Docket No. 29, Defendant's Exhibit TT). Additionally, there is no direct evidence in the record to raise an inference that Plaintiff's termination was connected with the EEOC charges she filed in 1996 and 2004, the discrimination or harassment complaints filed in 1999 and 2003 or the participation in a rally (Docket No. 28, Defendant's Exhibits LL, MM, NN, PP, RR, SS, TT). There is, however, sufficient evidence that the employer had exhausted the progressive discipline procedures; consequently, Defendants would have discharged Plaintiff even if she not filed a charge with the EEOC. Plaintiff's subjective assessment is insufficient to create a genuine issue of material fact on the claim of retaliation.

*Count Four: Violation of 42 U. S. C.§ 1983*

Plaintiff contends that by virtue of Defendant University's disciplinary actions toward her, including termination after she spoke publicly at a rally and filed charges with the EEOC, she was subjected to a deprivation of rights and privileges secured under Sections 1983 and 1985. Although Plaintiff references Section 1981 in the caption of Count Four, the Magistrate considers that Plaintiff's claim arises under the First Amendment. Section 1983 is the vehicle by which Plaintiff can seek redress.

> Section 1983 provides in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U. S. C. § 1983 (Thomson/West 2007).

Section 1983 prohibits persons under color of state law from depriving litigants of their rights under the United States Constitution and federal law; however, a university and its employees sued in their official capacities are not considered "persons" for purposes of Section 1983 litigation. *Stein v. Kent State University Board of Trustees,* 994 F. Supp. 898, 906 (N. D. Ohio 1998) *aff'd* 181 F. 3d 103 (6th Cir. 1999) (*citing Will v. Michigan Department of State Police,* 109 S. Ct. 2304, 2309 (1989)). Accordingly, Plaintiff's First Amendment claim raised under Section 1983 is without merit as a matter of law.

*Count Five: 42 U. S. C. § 1985*

Plaintiff argues that by virtue of their arrangements and understandings, Defendants McElfresh, Wasielewski, Armstrong and Mills, conspired to deprive Plaintiff of the equal privileges under the law because of her race, all in violation of Section 1985(3).

Section 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 314 (6th Cir. 2005) (*citing* 42 U.S.C. § 1985). To prevail on a Section 1985(3) claim, one must prove " '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' " *Id.* (*citing Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir. 2003) (*quoting United Brotherhood of Carpenters & Joiners v. Scott,* 103 S. Ct. 3352, 3355-

17

3356 (1983)). The Sixth Circuit has consistently applied a general rule in civil conspiracy cases that when all defendants are members of the same collective entity, there are not two separate people to form a conspiracy. *Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F. 2d 505, 509-510 (6th Cir. 1991) *cert. denied sub nom. Hull v. Shuck*, 111 S. Ct. 2917 (1991).

Plaintiff has not alleged or come forward with evidence that any of these named Defendants were employed by a separate legal entity. In fact, Defendants McElfresh, Wasielewski, Armstrong and Mills are all employed by the same entity–Defendant University. Since there is no probative evidence that Defendants McElfresh, Wasielewski, Armstrong and Mills are separate co-conspirators, Plaintiff cannot establish the conspiracy claim under Section 1985(3). Count four of Plaintiff's Complaint must also be dismissed.

*Count Six: Ohio Rev. Code § 4112*

Federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of Section 4112. *Ohio Civil Rights Commission v. Ingram*, 69 Ohio St. 3d 89, 630 N. E. 2d 669, 672 (1994). The prima facie requirements are essentially the same under federal and state case law. *Knox v. Neaton Auto Products Manufacturing*, 375 F. 3d 451, 457 (6th Cir. 2004). Specifically, the *McDonnell Douglas/Burdine* paradigm[7] is the evidentiary framework applicable to claims arising under Title VII and Ohio State law claims of discrimination. *Mitchell*, 965 F. 2d at 582 (*citing Laugesen v. Anaconda*, 510 F. 2d 307 (6th Cir. 1975); *In re*

---

[7] In *McDonnell Douglas,* the Supreme Court set forth a method for shifting the evidentiary burden regarding proof of an employer's discriminatory intent in Title VII cases where plaintiff could not set forth direct evidence of discriminatory intent. *McDonnell Douglas v. Green*, 93 S. Ct. 1817, 1824-1825 (1973). In *Burdine,* the Court determined that once the plaintiff establishes a prima facie case, the employer must meet its burden of production to establish legitimate, non-discriminatory reasons for the discharge. *Texas Department of Community Affairs v. Burdine,* 101 S. Ct. 1093-1094 (1981).

*Brantley*, 34 Ohio App. 3d 320, 518 N. E. 2d 602 (1987)).

Plaintiff has failed to establish a prima facie case for disparate employment treatment, a racially hostile work environment or retaliation under federal case law governing Title VII. Consequently, Plaintiff is unable to establish a prima facie case for disparate treatment, hostile work environment or retaliation under Ohio law.  Count Six of Plaintiff's Complaint must also be dismissed.

*Count Seven:  Violation of Public Policy*

Plaintiff alleges that because of Defendants' discrimination, she was wrongfully discharged in violation of public policy and Ohio's common law.

According to the Ohio Supreme Court, a plaintiff alleging such a public policy violation must demonstrate that there is no other remedy available. *Chavis v. Progressive Step Corporation,* 2006 WL 3422661, *1 (N. D. Ohio 2006) (*citing Wiles v. Medina Auto Parts,* 773 N.E.2d 526, 531 (Ohio 2002) (stating, "Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." ). If a plaintiff's complaint sets forth that there is a remedy available for discrimination under the Ohio Revised Code, a plaintiff cannot have a public policy claim for the same actions under Ohio common law. *Id.*

As Plaintiff's Complaint sets forth that there are available remedies under both the Ohio Revised Code and Title VII, she cannot have a public policy claim for the same actions under Ohio common law.  Plaintiff's claim for wrongful discharge in violation of public policy is barred as a matter of law.  Accordingly, Count Seven of Plaintiff's Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, the Magistrate recommends that Defendants' Motion for Summary Judgment be granted, the case dismissed and the referral to the Magistrate terminated.

/s/Vernelis K. Armstrong<br>United States Magistrate Judge

Date: 05/18/07

## NOTICE

Please take notice that as of this date the magistrate's report and recommendation attached hereto has been filed.

Please be advised that, pursuant to rule 72.3(b) of the local rules for this district, the parties have ten (10) days after being served in which to file objections to said report and recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the sixth circuit court of appeals, in *United States v. Walters*, 638 f.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.